IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GLESA FLEWELLEN-EL, an individual,

    Plaintiff,

  v.

AT&T, SERVICES, INC., a Delaware corporation,

    Defendant.

 /

No. C 17-04193 WHA

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

In this *pro se* employment discrimination action, defendant employer moves to dismiss. To the extent below stated, the employer's motion is **GRANTED**. Defendant also moves to strike portions of the complaint on the grounds that they are immaterial, impertinent, and unduly prejudicial. The motion to strike is **DENIED AS MOOT**.

## STATEMENT

The following is taken from the operative complaint. In 1999, defendant AT&T Services, Inc. hired plaintiff Glesa Flewellen-El as an associate analyst. In 2013, she sustained a work-related injury and started working from home until her termination in January of 2014 (Dkt. No. 16 at ¶¶ 7, 59).

The complaint chronicles a myriad incidents and dissatisfactions between her start date and her injury date. Plaintiff was discriminated against and harassed throughout her employment

because of her claimed nationality as a "Moor." She was promoted late, never given an "exceeded goal" rating despite working hard, overloaded with work and given undesirable job functions, excluded from "99%" of group meetings made mandatory for others, subjected to comments of servitude, and spied on by her team leader. Moreover, plaintiff had to walk through terrifying alleys to get to job-sites, and her co-workers sometimes laughed at her (*id.* at ¶¶ 1–26, 30, 32, 51).

Following her injury, doctors diagnosed plaintiff with a "sprain or strain of lumbar region" (*id.* at ¶ 60). No doctor, not even her primary physician, recommended that she take time off from work. Defendant conspired with her doctors to minimize her injury as part of a "ploy" to get her back into the office so that she could be further harassed.

Yet working from home led to further harassment — such as phone calls from her supervisor insinuating that plaintiff was staging her injury. Plaintiff emailed the CEO of AT&T Inc. (defendant's parent company) to report the harassment. In retaliation, AT&T interfered with plaintiff's home phone, cell phone, and fax machine in nefarious ways to prevent her from communicating further about the discrimination and harassment. Her home phone, for example, developed an intermittent dial tone. And, her fully charged cell-phone would not turn on for two days (*id.* at ¶ 32).

Plaintiff's employment with defendant ended in January 2014 (*id.* at ¶ 60). In February 2014, defendant sent her a letter regarding a dispute over the amount of her final paycheck. AT&T then changed her phone and internet service without permission. She then cancelled her service in February 2015 but never received her refund.

In April 2015, plaintiff found out that defendant had falsely reported giving her $500 to the Social Security Administration, which report resulted in denial of disability benefits. Lastly, in 2017, she received medical information confirming that defendant had conspired with her doctor "to intercept and have the MRI facility put congenital" on her report (*id.* at ¶¶ 34–38).

On April 27, 2017, the EEOC dismissed plaintiff's charge of discrimination as untimely and issued a right-to-sue letter. On July 24, 2017, plaintiff filed her initial complaint herein, which designated AT&T, Inc., as the sole defendant. Plaintiff then amended the complaint to

name AT&T Services Inc., her former employer and subsidiary of AT&T, Inc., as the sole defendant.

Plaintiff asserts claims under both federal anti-discrimination statutes and state tort law. Plaintiff's operative complaint alleges: (1) national origin discrimination and harassment in violation of Title VII, Section 1981, and Section 1983; (2) unlawful retaliation in violation of Section 1981; (3) disability discrimination, harassment, and wrongful termination in violation of the ADA; (4) failure to prevent discrimination, harassment, and retaliation under the ADA, Section 1981, and Section 1983; (5) fraud and deceit; and (6) intentional and negligent infliction of emotional distress (*id.* at ¶¶ 27–95).

Defendant now moves to dismiss all claims pursuant to FRCP 12(b)(6). Defendant also moves to strike portions of the complaint pursuant to FRCP 12(f).

This order first addresses the timeliness of each of plaintiff's claims. Next, for claims that are not time-barred, this order addresses whether the amended complaint fails to state a claim. Because this order finds that all of plaintiff's claims are either time-barred or fail to state a claim, it does not reach defendant's motion to strike.

**ANALYSIS**

**1. LEGAL STANDARD.**

To ensure that *pro se* litigants do not lose their right to a hearing on the merits because of a technical procedural requirement, we construe *pro se* pleadings liberally. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**2. STATUTE OF LIMITATIONS.**

**A. Plaintiff's Claims Under the ADA And Title VII are Time-Barred.**

Plaintiff failed to timely exhaust her administrative remedies. Both the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964 require a claimant to exhaust her administrative remedies by filing a charge of discrimination with the EEOC within the statutorily mandated deadline (180 or 300 days from the alleged discriminatory act). *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002); 42 U.S.C.

1  § 12117(a) (extending Title VII exhaustion requirement to ADA). Thus, the date plaintiff filed
2  her EEOC charge is dispositive of her claims under Title VII and the ADA.

3  The complaint appends the EEOC right-to-sue letter, but not the EEOC charge.
4  Accordingly, defendant requests judicial notice of (1) the discrimination charge filed with the
5  EEOC and DFEH; (2) the notice of the charge sent to defendant; and (3) the DFEH notice to
6  plaintiff.[1]

7  Plaintiff contends that an earlier letter she mass-faxed to the Secretary of Labor with
8  copies to other governmental agencies including the EEOC in February 2014, constituted a
9  timely charge with the EEOC (*see* Dkt. No. 29, Exh. C). This letter was addressed to the
10 Secretary of Labor (though copied to the EEOC). The EEOC refused to treat this letter as a valid
11 Title VII charge. The judicially noticed charge later submitted by defendant shows it was filed
12 with the EEOC on March 30, 2017 — more than three years after she was discharged (Dkt.
13 No. 24, Exh. B). Thus, all incidents taking place before June 3, 2016 — 300 days prior to the
14 charge — are time-barred. Because plaintiff's employment ended in January 2014, and all of her
15 allegations of discrimination and harassment necessarily occurred during her employment, all of
16 her claims under the ADA and Title VII must be **DISMISSED**.

17 In her opposition, plaintiff appears to make an argument for equitable tolling — alleging
18 that the EEOC generally told her that their investigations could take years, and that she could file
19 her charge via fax (Opp. at 3, 8). Filing a timely charge with the EEOC, like the statute of
20 limitations is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines,*
21 *Inc.*, 455 U.S. 385, 393 (1982). Thus, a district court may in equity decide to toll the limit in
22 special situations. Here, however, plaintiff does not provide any facts that would support
23 grounds for equitable tolling. Plaintiff is correct that the EEOC permits filing a charge by

---

[1] Although a court generally must not go outside the pleading, FRE 201 provides that a court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, "[a court] may take judicial notice of records and reports of administrative bodies." *Anderson v. Holder*, 673 F.3d 1089, 1094 at n.1 (9th Cir. 2012) (internal quotation marks omitted). Here, the discrimination charge constitutes an administrative record. Also, the plaintiff did not object to the request for judicial notice. Thus, defendant's requests for judicial notice is **GRANTED**.

4

sending a letter. But as plaintiff herself concedes, in April 2014, the EEOC sent her a letter informing plaintiff that the allegations in the letter she mass-faxed — all of which are now in plaintiff's operative complaint — would not be investigated because they "fall outside of the statutes enforced by the EEOC." Significantly, the EEOC made clear that she *must* file a charge of discrimination if she intended to sue (Dkt. No. 29, Exh. F; *see also*, Opp. at 3). Equitable tolling is therefore not merited.

### B. Some Fraud Claims are Time-Barred.

Plaintiff's claims of fraud, intentional misrepresentation, and deceit (hereinafter "fraud claims") are subject to a three-year statute of limitations. Cal. Code Civ. Proc. § 338 (d). "Under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005).

Here, plaintiff's conclusory assertion that the "delayed discovery rule" applies is undermined by the documents she herself provides. Notably, plaintiff's mass-fax to the Department of Labor in February 2014, included all of her fraud claims up to that point that are now in the complaint. Thus, plaintiff's own documentation demonstrates that her alleged fraud claims arising from her employment were known to her no later than February 2014, and there is no reason to delay accrual of her claims. All of her allegations of fraud before July 2014 are time-barred, and thereby **DISMISSED**. Plaintiff's remaining fraud allegations are addressed below for failure to state a claim.

### C. Plaintiff's Claims for Intentional and Negligent Infliction Of Emotional Distress are Time-Barred.

The statute of limitations for both intentional and negligent infliction of emotional distress is two years. Cal. Code Civ. Proc. § 335.1; *Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1450 (2007). Under California law, a claim accrues "when the harm is inflicted." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1292 (9th Cir. 1987) (citation omitted).

The basis for these claims are the "significant suffering emotionally, physically, and mentally" plaintiff suffered as a result of discrimination she endured during her employment (Dkt. No. 16 at ¶¶ 91–99). Given that plaintiff's employment ended well over two years ago, her

intentional and negligent infliction of emotional distress claims are time-barred, and thereby **DISMISSED**.

### D. Section 1981 Claims

Plaintiff's claims under 42 U.S.C. § 1981 are subject to a four-year statute of limitations. *See Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1007 (9th Cir. 2011), as amended (Aug. 19, 2011). As such, all allegations that pertain to discrimination, harassment, and retaliation that occurred prior to July 24, 2013, are time-barred. Allegations pertaining to incidents that occurred after July 24, 2013, however, are not time-barred insofar as they state a claim for relief.

Plaintiff has not alleged specific instances of discrimination that occurred after July 24, 2013. In fact, her most recent specific allegation relates to a harassing phone from a supervisor on July 11, 2013, which is time-barred (Dkt. No. 16 at ¶¶ 59, 61). Nevertheless, because plaintiff generally alleges that she was discriminated, harassed, and retaliated against throughout her employment — including the period after July 24, 2013, through the end of her employment whereby she worked from home — this order briefly addresses the deficiencies in her claims.

### 3. FAILURE TO STATE A CLAIM FOR RELIEF.

### A. Plaintiff's Section 1981 Claims Fail to State a Claim for Relief.

Plaintiff's remaining allegations — post July 24, 2013 — fail to state a claim for relief. Section 1981 prohibits all racial discrimination, which includes discrimination solely because of ancestry or ethnic characteristics. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 610 (citation omitted). Unlike Title VII, Section 1981 does not apply to discrimination solely on the basis of national origin. *See Runyon v. McCrary*, 427 U.S. 160, 168 (1976) (noting that Section 1981 applies only to race-based discrimination).

All of plaintiff's claims are based on her alleged nationality as a "Moor." The complaint does not explicitly state plaintiff's nationality or race, except for a single allegation that she was treated differently that her "non-moor co-workers" (Dkt No. 16 at ¶ 81). Plaintiff's declaration, however, clarifies that she is in fact alleging discrimination based on her purported nationality as a "Moor" (Dkt. No. 29, ¶ 3). Plaintiff states that the use of "El" — the suffix in her name — is her right, and has everything to do with her nationality (Opp. at 2).

Defendant replies that plaintiff is most likely a member of the Islamic affiliated group called the "Moorish Science Temple of America." Plaintiff denies that she is Muslim or that she is a member of the Moorish Temple. Instead, plaintiff defines "moor" as "a nation, group of people, branded as misnomers such as: black, negro, African American, etc." Plaintiff concludes that her nationality is "Moor," "just as some people might have a nationality of German, British, Lebanese, [or] Japanese[.]" (Dkt. No. 29 at 2). This definition of "Moor" coupled with her argument at oral hearing show that plaintiff's idiosyncratic use of "Moor" is likely a proxy for alleging she suffered discrimination because she is African-American. Although an allegation that defendant discriminated against plaintiff because she is African-American would quintessentially fall into the realm of claims covered under Section 1981, the complaint itself lacks any indicia of plaintiff's race, ethnicity, or ancestral heritage. More importantly, the complaint lacks any allegation that she was discriminated against *because* of her racial or ethnic background. For example, plaintiff has not alleged that her termination — a potential adverse employment action that would not be time-barred — was either retaliatory or racially motivated.

Furthermore, notwithstanding that the EEOC charge has no bearing on the Section 1981 claims, it is informative insofar as it shows plaintiff left the "Race" box unchecked. In other words, plaintiff has made it abundantly clear that she is deliberately choosing not to allege discrimination based on race. There is no authority for treating "Moor" as a class protected under Section 1981. Even a liberal reading of the complaint fails to evince any basis for Section 1981 claims. Accordingly, to the extent plaintiff's Section 1981 are not time-barred, they are **DISMISSED** for failure to state a claim. [2]

---

[2] Our court of appeals has not addressed whether or not "Moor" is a protected class, either as a nationality or as an ethnic group, under any federal statute. Other circuits, however, have addressed the claims of individuals asserting comparably peculiar national origins in the context of similar anti-discrimination statutes. Because a protected nationality is distinct from a protected race and discrimination solely based on nationality would not suffice to state a claim under Section 1981, even if "Moor" constituted a protected nationality, it would still not suffice to bring plaintiff's claims within the purview of Section 1981. Nevertheless, this Court finds other courts reasoning persuasive insofar as they show judicial restraint to carve out new protected classes. *See Wilson v. Art Van Furniture*, 230 F.3d 1358 (6th Cir. 2000) (the plaintiff who alleged national origin discrimination based on his membership in the "Washitaw de Dugdahmoundyah Empire" failed to show he is a member of a protected class); *Allah El v. Avesta Homes, LLC*, 520 F. App'x 806, 809 (11th Cir.

### B. Plaintiff's Section 1983 Claims Fail to State a Claim for Relief.

Defendant seeks dismissal of plaintiff's claims under 42 U.S.C. § 1983 on the ground that Section 1983 requires state action. Indeed, to state a claim for relief under Section 1983 "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Adkins*, 487 U.S. 42, 48 (1988).

Here, defendant is a private corporation, not a state actor (Dkt. No. 23-2). Plaintiff has not alleged otherwise. Because plaintiff's Section 1983 claims are incurable, they are **DISMISSED**.

### C. Plaintiff's Fraud Claims Fail to State a Claim for Relief.

Plaintiff's remaining allegations of fraud — post July 2014 — include allegations that: (1) AT&T changed her phone service from unlimited local calling to per minute pricing; (2) AT&T failed to give her a refund after she cancelled her phone and internet service; (3) defendant falsely told the Social Security Administration it paid plaintiff over $500, which caused denial of her social security application; (4) defendant conspired with "Kaiser, Sedgwick, and others to intercept and have the MRI facility put congenital on [plaintiff's] report despite the fact that [plaintiff] never had any pre-existing problems" (Dkt No. 16 at ¶¶ 36–38)

Plaintiff's fraud claims are subject to FRCP 9(b)'s particularity requirement. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). FRCP 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Our court of appeals has interpreted FRCP 9(b) to require that a plaintiff state the "who, what, when, where, and how of the misconduct charged" as well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotations and citation omitted).

---

2013) (holding that the district court did not err in dismissing claims for housing discrimination under FHA where the plaintiffs alleged their eviction to be discriminatory because the apartment complex managers were not "Moorish nationals"); *See also Bey v. Oakton Community College*, 2015 WL 5732031 at n.9 (N.D. Ill. Sep. 30, 2015) (Judge John J. Tharp, Jr.) ("those who claim to be 'Aboriginal Indigenous Native American Moors' of any stripe fail to allege a national origin that may serve as the predicate for [federal civil rights] claims").

Plaintiff's allegations pertaining to her phone and internet service are levied against "AT&T" generally, and not specifically against defendant AT&T Services Inc. Defendant "is not a telephone, cable, or internet service provider" (Dkt. No. 23-2). Plaintiff fails to observe that AT&T Services Inc. — her former employer and defendant in this action — is a legally separate entity from AT&T Inc., who provides said services and would be the proper defendant for such claims. Thus, plaintiff's allegations regarding her changed phone service and refund do not belong in this action.

Next, plaintiff argues that defendant's representation to the Social Security Administration constituted a misrepresentation of fact because she never received the reported $500. Plaintiff's allegation, however, fails to state with particularity the circumstances constituting the alleged misrepresentation. Importantly, plaintiff alleges only when she gained knowledge of the defendant's representation, but does not provide any set of facts establishing when *defendant made the representation* and what pay period it relates to. Furthermore, the operative complaint shows that in January 2014, plaintiff received a check for 77 hours of work, and plaintiff failed to eliminate the possibility that defendant's report coincided with said payment, and therefore not false (*see* Dkt. No. 16 at ¶ 34).

Lastly, plaintiff's contention that defendant conspired with her doctors to tamper her MRI results also fails to state a claim. Plaintiff does not allege the "who, what, when, where, and how of the misconduct charged" *Lungwitz*, 616 F.3d at 998. Plaintiff merely alleges that in 2017 she received medical information confirming that information had been "intentionally omitted from [her] copy of the paperwork" (Dkt. No. 16 at ¶ 38). Notably, plaintiff does not discuss what information she received that demonstrates her earlier MRI was tampered with, much less what the conspiracy was. Accordingly, all of plaintiff's remaining fraud claims are **DISMISSED** for failure to comply with FRCP 9(b)'s particularity requirement.

## CONCLUSION

For the foregoing reasons, all of plaintiff's claims are **DISMISSED** because they are either time-barred or fail to state a claim for relief. Plaintiff may seek leave to amend the complaint and will have until **APRIL 5, 2018**, within which to file a motion, noticed on the normal 35-day

9

track, for leave to file an amended complaint. The motion must include a proposed amended complaint (and a redlined copy) and must explain why the new pleading overcomes all deficiencies pointed out, including those raised by the defendant that this order need not reach. Plaintiff must plead her best case.

**IT IS SO ORDERED.**

Dated: March 12, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE